UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PATRICIA WATSON,

      Plaintiff,

v.                           CASE No. 8:17-CV-1948-T-33TGW

YAKIM MANASSEH JORDAN,
a/k/a PROPHET MANASSEH JORDAN
(an individual), and MANASSEH JORDAN
MINISTRIES, INC. (a New York religious
corporation),

      Defendants.

REPORT AND RECOMMENDATION

    The defendants, in response to the entry of a default judgment against them for $386,500, filed an Amended Motion to Set Aside Final Default Judgment (Doc. 35). The plaintiff opposes this motion (Doc. 49). None of the grounds that authorize relief from judgment excuse the defendants' failure to respond to the complaint. I therefore recommend that the motion be denied.

I.

    The plaintiff alleges that the defendants violated the Telephone Consumer Protection Act, 47 U.S.C. 227, et seq. (TCPA) by making unauthorized calls to her cellular telephone (Doc. 1). The plaintiff received at least 265 telephone calls from defendant Manasseh Jordan Ministries (the

Ministry) between April 11, 2016 and September 16, 2017 (Doc. 16-1, ¶8).[1] The plaintiff saved 72 of these prerecorded voicemails, which contain the voice of Yakim Manasseh Jordan (Jordan), a clergy member and leader of the Ministry (id.; Doc. 1, ¶14). The messages claim to have information regarding the plaintiff's personal and spiritual life (Doc. 1, ¶¶27, 28). The plaintiff never expressly consented to receive those telephone calls (id., ¶30). Further, she asked the Ministry to stop calling her on at least three occasions, in April, June and September 2016 (id., ¶31; Doc. 16-1, ¶10). However, the Ministry continued to make the unlawful telephone calls (see Doc. 1, ¶¶33, 35).

The plaintiff commenced this lawsuit on August 16, 2017 (Doc. 1). After attempting unsuccessfully to serve the defendants, plaintiff's counsel received a telephone call from attorney Robert Seibel, who stated that he represented the defendants and was authorized to accept service on their behalf (see Doc. 7).[2] On October 5, 2017, Seibel executed the waivers of service (Docs. 9-1, 9-2), but the defendants did not subsequently file a response to the complaint, or seek from the court an extension of time to do so.

---

[1] Based on the default entered in this case, the plaintiff's well-pled allegations are accepted as true. See Nishimatsu Construction Co. v. Houston National Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). The document and page numbers correspond to the CM/ECF designations.

[2] Seibel has over 40 years of experience as an attorney, including "considerable international business and legal experience." www.kressenassociates.com.

Seibel, however, communicated with plaintiff's counsel, James Giardina, about this case for several months on a near-weekly basis (see Giardina Aff., Doc. 49-1). Specifically, Giardina states that, "[d]uring the six months from the time Defendants' attorney first agreed to accept service in this case, we have exchanged approximately 32 phone calls, 11 emails, and 20 court documents" (Doc. 49-1,¶2; see Doc. 49-2). Furthermore, Seibel told Giardina during their telephone conversation on October 6, 2017 "that he wanted to settle the case before filing the answer, [or] otherwise would take a default" (Doc. 49-1, ¶19).

On November 27, 2017, the defendants still had not responded to the complaint. Consequently, the plaintiff filed a Motion for Entry of Default Against Both Defendants (Doc. 12) which was served upon Seibel (Doc. 49-1, ¶29). Thereafter, a Clerk's Default was entered against the defendants (Doc. 14).

On December 1, 2017, Seibel telephoned Giardina again to discuss this case (Doc. 49-1, ¶30). However, as of December 19, 2017, the defendants still had not filed a response to the complaint, challenged the default, or otherwise appeared in this action. Consequently, the plaintiff filed a Motion for Default Judgment against the defendants (Doc. 16). The court granted the

plaintiff's motion "[b]ased upon the Clerk's entry of default, the well-pled factual allegations contained in the Complaint, the Motion and its attachments," and awarded the plaintiff damages of $386,500 (Doc. 19, pp. 5, 8). On January 11, 2018, judgment was entered accordingly (Doc. 20).

Giardina states that, as recently as February 2, 2018, Seibel called him to discuss this case, but there was no resolution (Doc. 49-1, ¶33). On February 28, 2018, attorney Erik R. Matheney filed a Notice of Appearance on behalf of the defendants (Doc. 30).

Thereafter, the defendants filed this Amended Motion to Set Aside Final Default Judgment (Doc. 35), arguing that their failure to respond to the complaint is excusable pursuant to F.R.Civ.P. 60(b)(1). Specifically, defendant Jordan states in his affidavit that he was aware of this lawsuit, and "he authorized [his] attorney of six years, Robert Seibel, to accept service on behalf of the Ministries and myself" (Doc. 35-1, ¶¶4, 5). However, soon after they had a "serious falling out" and stopped speaking with each other (id., ¶6). Jordan states further that, although he was aware that a default could be entered against the defendants, he is "not well-versed in the legal process," and his focus was on serving the Ministry (id., ¶¶3, 5, 7). Consequently, he "did not think through the consequences of a default judgment" (id., ¶7).

-4-

The plaintiff opposes the defendants' motion to set aside the default judgment (Doc. 49). The plaintiff argues that the numerous settlement negotiations between Seibel and Giardina are inconsistent with Jordan's implicit assertion that Seibel was no longer his attorney (id., p. 6). In all events, the plaintiff contends that the defendants have not given any meaningful explanation for failing to monitor the progress of this case (id., pp. 9-11).

The motion to set aside the default judgment was referred to me, and I heard oral argument on the motion (see Docs. 36, 52). At the hearing, the parties relied upon their previously filed memoranda and affidavits. Thus, they did not submit additional evidence or reply to the opposing party's contentions. Counsel stated that they would continue settlement negotiations following the hearing, but those efforts failed.

II.

It is recognized that there is a strong public policy for having a case determined on its merits. Sloss Industries Corp. v. Eurisol, 488 F.3d 922, 934 (11th Cir. 2007). Consequently, Rule 60(b)(1), F.R.Civ.P. provides that a court may relieve a party from final judgment for "mistake, inadvertence, surprise, or excusable neglect."

On the other hand, this rule is "not so elastic as to be devoid of substance." <u>Farquharson</u> v. <u>Citibank, N.A.</u>, 664 Fed. Appx. 793, 797 (11th Cir. 2016), <u>quoting</u> <u>Compania Interamericana Exp.–Imp., S.A.</u> v. <u>Compania Dominicana de Aviacion</u>, 88 F.3d 948, 951 (11th Cir. 1996). Therefore, in order to set aside a default judgment pursuant to Rule 60(b)(1), F.R.Civ.P., the defaulting party must show that it has a meritorious defense, the opposing party would not be prejudiced if the judgment were set aside, and that there is a good reason for failing to respond to the complaint. <u>Sloss Indus. Corp.</u> v. <u>Eurisol</u>, <u>supra</u>, 488 F.3d at 934. This decision is generally an equitable one, taking into account the totality of the circumstances surrounding the defaulting party's omission. <u>Id</u>.

## III.

The defendants contend that their failure to respond to the complaint "was a mistake, inadvertence, surprise or excusable neglect" (Doc. 35, p. 3). The defendants, in particular, focus on a lack of communication with their attorney (<u>id</u>., pp. 5-6). They also contend that setting aside the default "would do nothing except allow this action to be decided on its merits" (<u>id</u>., p. 5). The plaintiff responds that: (1) there is no good reason for the defendants' failure to file a responsive pleading, (2) the requested relief is unfairly

prejudicial to the plaintiff and (3) the defendants have not stated a meritorious defense to this lawsuit (Doc. 49).

A.    <u>Good reason for failure to respond to the complaint</u>

The defendants have not offered any reason (and certainly no good reason) for their attorney's failure to respond to the plaintiff's complaint. Rather, the undisputed evidence shows that the defendants, through their counsel, deliberately ignored their obligation to respond to the complaint as part of a strategy to settle this case outside of the litigation. Thus, this is not the typical circumstance in which a default judgment is entered against a defendant for failing to respond to the plaintiff's complaint as a result, for example, of a mistake or oversight in an attorney's office.

Specifically, defense counsel was actively working on this case for several months, as evidenced by his near-weekly telephone calls with plaintiff's counsel (Docs. 49-1, 49-2). Nevertheless, he did not file a response to the brief, one-count complaint. Furthermore, the plaintiff served upon defense counsel many of the court filings, including the Motion for Clerk's Default (Doc. 49-1, ¶29). Therefore, defense counsel was aware that this litigation had reached the default stage, yet he continued to shirk his obligation to respond to the complaint.

Defense counsel's litigation strategy was confirmed during a telephone call with plaintiff's counsel on October 6, 2017. Giardina averred that Seibel told him "that he wanted to settle the case before filing the answer, [or] otherwise would take a default" (Doc. 49-1, ¶19). Importantly, the defendants have not controverted any aspect of Giardina's affidavit. Therefore, the only reasonable conclusion is that defense counsel, who is an experienced attorney, willfully defaulted in this case. See Annon Consulting, Inc. v. BioNitrogen Holdings Corp., 650 Fed. Appx. 729, 732 (11th Cir. 2006).

Obviously, a willful default does not excuse the defendants' failure to respond to the complaint. See Valpak Direct Marketing Systems, Inc. v. Hyde, No. 8:06-cv-347-T-26EAJ; 2006 WL 1982877 at *2 (M.D. Fla. 2006) ("Rule 60(b)(1) was not intended to relieve a litigant from the consequences of .... a conscious decision, however unwise the decision may appear in retrospect.") ; Ostane v. Jim Wright Marine Construction, Inc., No. 10-60168-CIV; 2010 WL 3385048 at *4 (S.D. Fla. 2010) (When a party's "decision to ignore [the court's] proceedings was intentional [] [the party] [has] failed to establish excusable neglect."); see, e.g., Annon Consulting, Inc. v. BioNitrogen Holdings Corp., supra, 650 Fed. Appx. at 732 (rejecting a request to set aside a

-8-

default when the "[d]efendants' failure to file an answer was due to litigation strategy: to effect a settlement and avoid proceeding with the litigation").

Moreover, it is appropriate to hold the defendants responsible for their attorney's strategic missteps. Generally, "[c]lients must be held accountable for the acts and omissions of their attorneys." Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 397 (1993). As the Supreme Court explained in Link v. Wabash R. Co., 370 U.S. 626, 633-34 (1962),

> [t]here is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent....

Therefore, "a defendant does not have a 'good reason' for failing to respond to a complaint" when he "know[s] that an action has been filed against him, [and] fails to act diligently in ensuring that his attorney is adequately protecting his interests." Sloss Indus. Corp. v. Eurisol, supra, 488 F.3d at 935-36 (citations omitted); see also S.E.C. v. Simmons, 241 Fed. Appx. 660, 663-64 (11th Cir. 2007) (the court notes its "wariness of grants of Rule

60(b)(1) relief ... based on attorney error" and "[a]t the very least, a party must demonstrate his own diligence, even when the attorney commits gross misconduct").

Diligence requires, minimally, a showing that the defaulting party monitored the progress of the case. S.E.C. v. Simmons, supra, 241 Fed. Appx. at 664 (party who failed to make reasonable inquiries into the status of his case was not entitled to relief under Rule 60(b)(1)); Florida Physician's Insurance Co., Inc. v. Ehlers, 8 F.3d 780, 784 (11th Cir. 1993) (failure of a party to "determin[e] that action in response to a summons and complaint is being taken does not constitute default through excusable neglect"). Here, the defendants have not stated that they made any attempt to monitor the status of this case.

However, the defendants contend they have a good reason for failing to reply to the complaint (Doc. 35, p. 5). In this respect, they state (id.):

> As described in Mr. Jordan's affidavit, the relationship between Jordan and his counsel... deteriorated at the same time a response to the Complaint was coming due, culminating in a complete falling out. Mr. Jordan and his counsel have not spoken since. Although Jordan, a non-attorney who is not well-versed in the legal process, was aware of this lawsuit and the potential default, he did not

fully understand the ramifications of not responding
to the Complaint.[3]

However, a lack of communication with counsel is not, in itself, a good reason for failing to file a responsive pleading (supra, pp. 9-10); see Florida Physician's Insurance Co., Inc. v. Ehlers, supra, 8 F.3d at 784. In Ehlers, the defendant claimed excusable neglect because he was unable to contact his attorney at the time of the default.  The Eleventh Circuit held "this was not excusable neglect because the defendant appears to have done nothing to ensure that his interests were being sufficiently represented. Such inaction demonstrates a lack of diligence on Ehlers's part...." S.E.C. v. Simmons, supra, 241 Fed. Appx. at 664.

Here, the circumstances outlined by Jordan — i.e., that he was aware of the lawsuit, but his attorney stopped speaking with him shortly after waiving service — "should have alerted him of potential problems" and

---

[3]Jordan does not claim that Seibel withdrew as the defendants' attorney. Furthermore, it is inherently incredible that Seibel would engage in protracted settlement negotiations with plaintiff's counsel if he were no longer the defendants' attorney.  For example, in a November 13, 2017 e-mail to plaintiff's counsel, Seibel states (Doc. 49-14) (emphasis added):

> The best offer we can currently make ... is $10,000.... We are no longer in a position to make any substantial offer--as the money does not exist--and can only come from future donations.

Notably, Seibel copied this e-mail to Frank Juliano, who is the Ministry's Chief Operating Officer (Docs. 49-14, 49-15).  See Local Rule 2.03(e) ("A corporation may appear and be heard only through counsel admitted to practice in the Court...").

prompted Jordan to take action in order to "ensure that [the defendants']
interests were being sufficiently represented." <u>Florida Physician's Insurance
Co., Inc.</u> v. <u>Ehlers, supra,</u> 8 F.3d at 784; <u>see also Davis</u> v. <u>Safeway Stores, Inc.,</u>
532 F.2d 489, 490 (5th Cir.1976). The defendants, however, do not state that
they took any timely action to apprise themselves of the status of the case or
obtain substitute counsel, if necessary.

The defendants argue further that their inaction is excusable
because Jordan is an unsophisticated party (<u>see</u> Doc. 35, p. 5). Thus, Jordan
avers that he is "not well versed in the legal process" and, although he was
aware a default judgment could be entered, he "did not fully understand the
ramifications of such default" (Doc. 35-1, ¶¶3, 5). This contention is
unpersuasive.

Jordan's awareness that a default could be entered against them
shows that he has a basic understanding of a party's obligation to file a response
to the lawsuit. Furthermore, Jordan's contention that he is an unsophisticated
litigant is disingenuous because the defendants have defended many similar
cases in the past few years. Specifically, the plaintiff contends that the
defendants "have been getting sued regularly since 2013. Jordan was named as
an individual in at least 19 cases.... [and] his company was named as a defendant

-12-

in 25 cases...." (Doc. 49, p. 10). Several of those cases were in this court (see Docs. 49-3, 49-4). Therefore, the defendants are "no strangers to litigation. They should have been alerted to the need to independently monitor their case.... In light of their lack of diligence, [defendants] are [properly] bound by the actions and inactions of their chosen counsel...." Atmos Nation, LLC v. All Rise Records, Inc., 2017 WL 3635111 at *2 (S.D. Fla. 2017).

Finally, the defendants argue that "[c]ourts, in similar situations, have set aside defaults" (Doc. 35, p. 5). However, the cases cited by the defendants are factually inapposite. Thus, in In re Olympia Holding Corp., 226 B.R. 705, 708-709 (M.D. Fla. 1998), the court found that the defaulting party "could reasonably expect that counsel was handling the matter appropriately," and that "counsel's error...can fairly be characterized as a 'technical error or a slight mistake' that has no negative impact on the plaintiff or on the adversary proceeding." As discussed supra, those circumstances are not present in this case.

The defendants also cite to Ortega v. LasBrisas Restaurante, LLC, 2015 WL 11181730 (S.D. Fla. 2015), in which the court excused the plaintiff's failure to file a timely reply because it "was not done in bad faith, but rather a result of his lack of knowledge of the legal process and his inability to afford to

-13-

hire an attorney." However, Jordan admitted that he understood a default could be entered, and there is no record evidence that the defendants lacked the financial means to hire counsel.

In sum, neither the defendants, nor their counsel, have a good reason for failing to respond to the complaint. Accordingly, this factor weighs against granting the motion to set aside the default judgment.

B.   Meritorious defense

In order to obtain relief under Rule 60(b)(1), the defaulting party must also "demonstrate that he had a meritorious defense that might have affected the outcome." S.E.C. v. Simmons, supra, 241 Fed. Appx. at 664. This is a demanding standard. Specifically,

> there should appear in the motion a clear and specific statement showing, not by conclusion, but by definite recitation of facts, that an injustice has been probably done by the judgment, in that ... that there was a valid defense to it, and that ... [if the default is vacated] there will in reasonable probability be a different result.

Moldwood Corp. v. Stutts, 410 F.2d 351, 352 (5th Cir. 1979); see also In re Worldwide Web Systems, Inc., 328 F.3d 1291, 1297 (11th Cir. 2003); Solaroll Shade & Shutter Corp. v. Bio-Energy Systems, Inc., 803 F.2d 1130, 1133 (11th Cir. 1986).

-14-

The defendants clearly have not met this standard.  In this regard, they argue (Doc. 35, pp. 4-5):

> Defendants have a meritorious defense to Plaintiff's claim....[I]t is Defendants' normal practice to contact individuals that consent to be contacted by phone. Upon preliminary investigation, Defendants believe Plaintiff contacted them multiple times to inquire about Ministries' prayer services and other matters, and may have consented to receive calls from Defendants. In addition, Defendants are uncertain if they were ever advised that Plaintiff did not want to be contacted.

Thus, the defendants offer in general and conclusory terms the possibility of a consent affirmative defense. See Murphy v. DCI Biologicals Orlando, LLC, No. 6:12-CV-1459-ORL, 2013 WL 6865772 at *4 (M.D. Fla. 2013) ("prior express consent" is an affirmative defense).  However, mere speculation that the plaintiff "may have consented to receive calls" clearly falls short of the required "affirmative showing of a defense that is likely to be successful." In re Worldwide Web Systems, Inc., supra, 328 F.3d at 1296. Furthermore, the defendants do not identify any specific facts underpinning this contention, nor do they support these assertions with evidence. See Moldwood Corp. v. Stutts, supra, 410 F.2d at 352.[4]  Therefore, the defendants have not

---

[4]As the plaintiff states, even if she telephoned the Ministry, that does not necessarily mean she consented to its telephone calls (Doc. 49, p. 15). Furthermore, whether the plaintiff

shown that they have a meritorious defense to the plaintiff's claim. See In re Worldwide Web Systems, Inc., supra, 328 F.3d at 1296.

### C.   Prejudice

The last factor to evaluate is whether granting the motion would prejudice the non-defaulting party. Annon Consulting, Inc. v. BioNitrogen Holdings Corp., supra, 650 Fed. Appx. at 732. The plaintiff argues that she would be prejudiced if the default judgment is set aside because the defendants' delay and failure to respond to the complaint "has likely resulted in the destruction of evidence that the Plaintiff would have otherwise had available to prove her case" (Doc. 49, pp. 16-17).

The inability to obtain relevant evidence due to the opposing party's failure to litigate is clearly prejudicial and favors the denial of this motion. See In Re Worldwide Web Systems, Inc., supra, 328 F.3d at 1297; Atmos Nation, LLC v. All Rise Records, Inc., supra, 2017 WL 3635111 at *2 (denying a motion to set aside a final judgment because, among other factors, the opposing party was unable to obtain evidence from the plaintiffs to mount a meaningful defense or prosecute their counterclaims).

---

told the Ministry not to contact her is irrelevant because the "the TCPA places no affirmative obligation on a called party to opt out of calls to which he or she never consented" (Doc. 49, p. 16, quoting In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 FCC Rcd. 7961 at ¶81).

In this case, the plaintiff contends that she did not have an opportunity to serve subpoenas upon the defendants' telephone service providers, who represent that they keep call data for only one year (Doc. 49, p. 17). The defendants have not controverted this assertion. Consequently, relevant evidence may be lost due to the defendants' dilatory tactics. Furthermore, the plaintiff points out, reasonably, that she has spent considerable time and substantial expense in obtaining the default judgment in this case (id.). Therefore, the plaintiff would be unfairly prejudiced in this respect as well.

The defendants contend that setting aside the default judgment would not prejudice the plaintiff, as it "would do nothing except allow this action to be decided on the merits" (Doc. 35, p. 5). This is incorrect; as discussed supra, pp. 16-17, setting aside the default judgment would not return the parties to the status quo.

Furthermore, the defendants argue that the plaintiff "delayed prosecuting this action" (Doc. 35, p. 5). This argument is frivolous considering that the defendants did not return the completed waivers of service for more than one month after defense counsel agreed to accept service on behalf of the defendants (see Doc. 49-1, ¶¶10, 18).

Finally, the defendants mention that "there is no record of there being a writ of execution ... to enforce the money judgment" (Doc. 35, p. 5). However, that is irrelevant to the prejudice the plaintiff would experience if the motion to set aside default were granted.

In sum, setting aside the default judgment would unfairly prejudice the plaintiff. Therefore, this consideration also disfavors setting aside the default judgment.

## IV.

For the foregoing reasons, each of the factors relevant to determining whether to set aside a default judgment weigh in favor of denying of this motion. Accordingly, I recommend that the Defendants' Emergency Amended Motion to Set Aside Final Default Judgment (Doc. 35) be denied.

DONE and ORDERED at Tampa, Florida, this *15th* day of May, 2018.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

-18-

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.